# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>THE BODY OF RYAN DOUGLAS YAZZIE,<br>YOB 1997 | )<br>)<br>) Case No. MR 24-2127<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Attachment A

located in the _____ District of ___New Mexico___, there is now concealed *(identify the person or describe the property to be seized)*:
Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951, | Obstruction of Interstate Commerce by Robbery |

The application is based on these facts:
See attached affidavit, incorportaed herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Lorraine Hardy, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephonically Sworn and Electronically Signed  *(specify reliable electronic means)*.

Date: November 19, 2024

*Judge's signature*

City and state: Farmington, New Mexico     B. Paul Briones, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | Case No. |
| THE BODY OF RYAN DOUGLAS YAZZIE, YOB 1997 | **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41
FOR A WARRANT TO SEARCH AND SEIZE**

I, Lorraine Hardy of the Federal Bureau of Investigation, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the body of Ryan Douglas YAZZIE (born in 1997), to collect deoxyribonucleic acid (DNA) samples by way of buccal swabs. I believe YAZZIE's DNA may be present on an orange-colored shirt that will be sent for laboratory testing to which the Defendant's DNA samples will be compared.

2. YAZZIE was charged by criminal complaint on November 8, 2024, with violating 18 U.S.C. § 1951, Obstruction of Interstate Commerce by Robbery.

3. YAZZIE has not yet been arrested and is not currently in custody.

4. Because this affidavit is submitted for the limited purpose of seeking a search warrant to collect DNA samples from YAZZIE, I have not set forth each and every fact I have learned during the course of this investigation. I have set forth only the facts that I believe are necessary to establish the foundation for an order authorizing the requested search warrant.

1

**PURPOSE OF THE AFFIDAVIT**

5. As set forth herein, there is probable cause to believe that YAZZIE committed violations of 18 U.S.C. § 1951, Obstruction of Interstate Commerce by Robbery. Because there is probable cause to believe YAZZIE committed this crime, there is also probable cause to believe YAZZIE's DNA will be found on pieces of evidence collected in this investigation. Therefore, probable cause exists to collect DNA samples from YAZZIE via buccal swab in order to compare it with samples collected from the lawfully seized evidence in this case.

**AFFIANT'S RELEVANT TRAINING AND EXPERIENCE**

6. I am currently serving as an FBI Special Agent assigned to the FBI, Albuquerque Division, Farmington Resident Agency, where I primarily investigate crimes that occur in Indian Country to include homicide, aggravated assault, child sexual assault, kidnapping and rape. I have been with the FBI for approximately six years. I have received on the job training from other experienced agents, detectives, Indian Country criminal investigators, and tribal police officers. My investigative training and experience includes, but is not limited to, processing crime scenes, conducting surveillance, interviewing subjects, targets, and witnesses, writing affidavits for and executing search and arrest warrants, examining cellular telephones; managing confidential human sources and cooperating witnesses/defendants, serving subpoenas, collecting and reviewing evidence, and analyzing public records.

7. As part of my training and experience, I have had the opportunity to collect and evaluate forensic evidence, like DNA, for evidentiary value. I also have training and experience in the proper collection, packaging, and dissemination of DNA evidence.

8. Through my training and experience, I am aware that human saliva and droplets of human sweat contain DNA, which can be used to help identify an individual, and that DNA from

human saliva or sweat droplets can potentially be recovered and used to help identify an individual, after the individual comes in contact with a person's skin or clothing worn during the commission of a crime.

9. Based on my training and experience, I know that collection of YAZZIE's DNA will allow the forensics lab to compare his DNA to any other DNA profiles identified on the items to be analyzed.

## FACTS AND CIRCUMSTANCES ESTABLISHING PROBABLE CAUSE

10. On or about October 31, 2024, at approximately 4:33 p.m., the Farmington Resident Agency of the FBI was notified by Navajo Nation Department of Criminal Investigations (NNDCI) that the 7 to 11 Gas Station in Shiprock, New Mexico was robbed. An unidentified male knocked down a female cashier (JANE DOE), year of birth 1970, grabbed the cash register drawer and fled on foot. Navajo Police Department (NPD) officers later that day detained two other possible suspects hereinafter referred to as A.E., year of birth 1992, and J.W., year of birth 1985. NPD advised A.E. and J.W. were under the influence of an unknown substance and were transported to Kayenta Correctional Facility in Arizona. JANE DOE was taken to Northern Navajo Medical Center for treatment.

11. It was learned from an NPD police report (02-24-019142) that officers were dispatched to the 7 to 11 Gas Station at approximately 6:30 a.m. for a robbery. On arrival NPD officers went to the front door of the Gas Station, which was locked. 7 to 11 Store Manager (E.R.), year of birth 1962, opened the front door. E.R. told officers she saw a male (UNSUB 1), wearing a grey hooded sweater, shove JANE DOE, grab the cash register drawer, and take off out the front doors. E.R. stated earlier that morning at approximately 5:32 a.m., she observed a grey SUV pull up from the laundromat next door and reverse into a parking spot. Two males exited the SUV. One

was wearing a clown mask; the other had a piece of clothing wrapped around his head. Both males came into the store.[1] E.R. told them they could not wear masks in the store. E.R. recognized UNSUB 1 who went into the restroom, the other male (UNSUB 2) wandered around the store, and then they both left.

12. E.R. watched on the store security cameras and observed both males leave. E.R. observed the male with the cloth around his head remove the cloth and toss it behind the store, before getting into the SUV and leaving. E.R. showed NPD officers where the cloth was located. NPD officers later observed an orange-colored torn shirt on the ground behind the store and collected it as evidence. NPD transferred the orange shirt into FBI custody. The shirt is currently pending FBI lab analysis.

13. NPD officers observed the 7 to 11 Gas Station store security footage and saw JANE DOE being shoved to the floor by UNSUB 1. On another store security video officers observed UNSUB 1 run behind the store headed north after robbing the store. He was wearing a grey hoodie, black pants, and black and white Converse shoes. After viewing the footage and exiting the store, NPD officers were unable to locate UNSUB 1.

14. JANE DOE was interviewed by law enforcement the following day at NNDCI office in Shiprock. JANE DOE started her shift at the 7 to 11 Gas Station the day prior at 4:00 a.m. JANE DOE and E.R. were the only two working. At approximately 5:30 a.m. two males entered the store with face masks on and JANE DOE heard E.R. tell them no masks allowed in the store. One male was wearing a black jacket and had a clown mask under his arm. Law enforcement later identified him as UNSUB 2. The other male was wearing a grey hooded sweatshirt and an orange

---

[1] The "store" is mentioned throughout and is referenced as the 7 to 11 Gas Station store in Shiprock, New Mexico.

towel or shirt over his face. Law enforcement later identified him as UNSUB 1. UNSUB 1 went into the restroom, and UNSUB 2 walked around the store and then left. UNSUB 1 came out of the restroom without the orange face covering and stood near the popcorn machine. UNSUB 1 kept looking behind the counter and then left the store.

15. At approximately 6:25 a.m. JANE DOE saw UNSUB 1 walk back into the store. JANE DOE did not see UNSUB 2. UNSUB 1 made himself a fountain drink and then walked over to the counter near the register and asked for a straw. JANE DOE told him she would give him one when he paid for his drink. UNSUB 1 hung out near the front counter near the area to get behind the counter. JANE DOE was suspicious he may attempt to steal cigarettes, so she kept an eye on him. JANE DOE was helping a customer and as soon as the register drawer came open, UNSUB 1 moved behind the counter and grabbed the cash tray. JANE DOE also grabbed the cash tray to attempt to keep UNSUB 1 from taking it. UNSUB 1 pushed JANE DOE down, and she hit her head. JANE DOE yelled for E.R., and UNSUB 1 ran out the front door with the cash tray.

16. JANE DOE later felt pain in her head, so she went to Northern Navajo Medical Center (NNMC) for treatment. JANE DOE suffered from left wrist and left elbow pain as well as a bump on her head. JANE DOE stated she was really scared during and after the incident. JANE DOE was afraid UNSUB 1 might come back and hurt her.

17. I interviewed E.R. and learned that the occupants of the grey SUV have been coming to the 7 to 11 Gas Station for the last week, stealing food items, and then fleeing. E.R. described the grey SUV as being an older model with a big round crack on the passenger side windshield. I observed the 7 to 11 Gas Station security footage of a grey SUV backed into a parking spot.

18. E.R. detailed the event of the robbery as described above to NPD officers. E.R. also stated a female with a tattoo on her face who E.R. had previously seen get into the grey SUV came into the store to get gas around the same time UNSUB 1 robbed the store. Law enforcement later identified the female as A.E. E.R. saw A.E. on the surveillance footage parked at the gas pumps to get gas. E.R. observed A.E. get out of the passenger side of the SUV and come inside the store to pay for her gas. A.E. was standing behind UNSUB 1 when he robbed the store. After the UNSUB1 left, A.E. ran outside and jumped back into the grey SUV and took off towards Farmington. E.R. did not see who the driver of the grey SUV was.

19. E.R. stated UNSUB 1 was in his early 30s, tall, wearing a grey sweatshirt and black pants as well as an orange or white scarf or shirt over his face. UNSUB 2 had on a clown mask with orange hair. E.R. provided law enforcement a photo of the stolen cash register tray. E.R. had previously taken the photo of the cash register tray for the purpose of training new employees.



20. The following day J.W. was interviewed by law enforcement at Kayenta Correctional Facility in Arizona. J.W. stated he was cruising around with his friend A.E. and another friend, Ryan Yazzie (YAZZIE), year of birth 1997, who J.W. had just met a month or two ago. (UNSUB 1 and UNSUB 2 will hereafter be referred to as YAZZIE and J.W.) J.W. stated

neither he nor A.E. had any part in the robbery and did not want anything to do with it. J.W. stated the grey SUV they were cruising around in belonged to A.E.

21.     J.W. stated he parked at the laundromat next to the 7 to 11 Gas Station. J.W. could not remember what time it was but it was dark outside. YAZZIE kept talking about getting some money. J.W. told YAZZIE he was on his own and did not want YAZZIE in his vehicle. J.W. was concerned YAZZIE was going to rob the gas station and get J.W. in trouble.  YAZZIE got out of the grey SUV and went into the 7 to 11 Gas Station.  J.W. and A.E. sat in the grey SUV and watched because they knew YAZZIE was going to do something. YAZZIE was in the gas station for a while before J.W. saw YAZZIE running out of the store holding his hands up to this chest. YAZZIE ran behind the store, and J.W. did not know where he went.

22.      J.W. saw YAZZIE approximately two hours after he robbed the gas station at another friend's house (the subject premises) in Hogback,[2] New Mexico. J.W. stated the subject premises was near Laphahie Food Stand in Hogback. J.W. showed law enforcement the location of the subject premises on Google maps (GPS 36.78018, -108.63465). J.W. stated YAZZIE used to live at the Nizhoni Park in Shiprock but was now staying at the subject premises.

23.     While at the subject premises, YAZZIE pulled a wad of cash out of his pocket and started laying it down on the table counting it. J.W. saw the cash and YAZZIE acted excited about it. J.W. got into an argument with YAZZIE for possibly getting him into trouble. J.W. believed the grey SUV was seen during the robbery and police would think it was J.W. who robbed the store.

24.     J.W. also stated he and YAZZIE had gone into the gas station earlier that same day to get drinks. J.W. believed YAZZIE had cash, but when J.W. realized YAZZIE did not have any

---

[2] Hogback is used in reference to a small community located on the east side of Shiprock, New Mexico.

money they left. J.W. recalled wearing face masks into the store but the lady in the store said they had to take them off. J.W. got the face mask from a friend for his son to use for Halloween.

25. The following day A.E. was interviewed by law enforcement at Kayenta Correctional Facility in Arizona. A.E., her daughter, and her friend, J.W., was cruising around in A.E.'s grey SUV. A.E. needed gas, so she went into the 7 to 11 gas station and stood in line. A.E. was swiping her card to pay for fuel when she saw YAZZIE standing behind her. A moment later, YAZZIE went around the counter, and A.E. saw the cashier lady fall to the ground. YAZZIE grabbed the whole cash register and ran out the front door headed east. The cashier who had been helping A.E. got on the phone, so A.E. just left. A.E. was uncertain what time of day it was but stated it was dark outside.

26. A.E. later admitted to knowing who YAZZIE was because he was J.W.'s friend. A.E. knew YAZZIE as "Cowboy" and had met him prior to the robbery outside of J.W.'s friend's house in Hogback, New Mexico. A.E. showed law enforcement the location of the friend's house on Google maps. The location identified by A.E. was in the same area as the subject premises identified earlier by J.W.

27. A.E. stated that while at the subject premises in Hogback YAZZIE asked A.E. and J.W. for a ride to the store. A.E. believed YAZZIE was hyped up and energetic to do "something," but A.E. did not know what. A.E. did not speak to YAZZIE, but believed YAZZIE may have been high on methamphetamine due to his behavior. A.E. did not see YAZZIE use methamphetamine.

28. A.E. was later shown a photo to see if the man in the photo was J.W.'s friend. A.E. stated she was 100% certain the man in the photo was J.W.'s friend, the man she and J.W. gave a ride, and the man she saw rob the store.



Photo of YAZZIE

29. Based on the foregoing, there is probable cause to believe that the DNA samples sought through this warrant will provide evidence pertaining to violations of 18 U.S.C. § 1951, Obstruction of Interstate Commerce by Robbery.

30. The item of evidence—an orange shirt—listed above is in the lawful custody of the FBI. Based on my training, experience, and involvement in this case, I know that this item was collected and have been stored in such a manner that DNA present on the evidence at the time of collection will still be present on the evidence at this time.

## METHOD OF EXECUTION

31. The buccal-swab samples from YAZZIE will be obtained pursuant to approved procedures, without unnecessary discomfort to YAZZIE, and under circumstances where he will feel little or no pain or embarrassment.

32. After collection, I will ship YAZZIE's swabs to the FBI Laboratory in Quantico, Virginia, for comparison testing.

33. YAZZIE can be described as a twenty-seven-year-old Native American male, year of birth 1997. YAZZIE is approximately 6 feet tall, 170 pounds, with black hair and brown eyes. YAZZIE has a Social Security number ending in 6072.

34. YAZZIE was last known to be staying at a double-wide trailer with blue roof, GPS 36.78018, -108.63465, Shiprock, New Mexico 87420. A picture of YAZZIE is included above and within Attachment A.

## CONCLUSION

35. There is probable cause to believe YAZZIE committed violations of 18 U.S.C. § 1951, Obstruction of Interstate Commerce by Robbery, and that the DNA sample sought in this warrant will provide evidence of this violation. Therefore, I am seeking authorization under Rule 41 of the Federal Rules of Criminal Procedure to collect DNA samples from YAZZIE, via buccal swab to compare with any DNA that is found on an orange-colored shirt seized as evidence by NPD officers and currently in the FBI's lawful custody.

36. This affidavit has been reviewed and approved by Assistant United States Attorney Jena Ritchey.

Respectfully submitted,

*[signature: L Hardy]*

Lorraine Hardy
Special Agent

Telephonically sworn and electronically signed on November 19, 2024:

*[signature: B Paul Briones]*

HONORABLE B. PAUL BRIONES
United States Magistrate Judge

**ATTACHMENT A**

PERSON TO BE SEARCHED

The person of Ryan Douglas Yazzie (year of birth 1997), so long as he is located in the District of New Mexico. YAZZIE has a Social Security number ending in 6072. He was last known to be staying at a double-wide trailer with blue roof, GPS 36.78018, -108.63465, Shiprock, New Mexico 87420. YAZZIE is approximately 6 feet tall, 170 pounds, with black hair and brown eyes.

YAZZIE is pictured below:



1

2

## ATTACHMENT B

PROPERTY TO BE SEIZED BY THE GOVERNMENT

The following material, which constitute evidence of the commission of a criminal offense, namely violations of 18 U.S.C. § 1951, Obstruction of Interstate Commerce by Robbery:

1. DNA from YAZZIE in the form of saliva collected with buccal swabs.